| | |
|---|---|
| **ROBERT WISNIEWSKI P.C.**<br>ATTORNEYS-AT-LAW | 17 STATE STREET, SUITE 820 • NEW YORK, NY 10004<br>TEL: (212) 267-2101 • WEB: www.rwapc.com |

December 5, 2022

Hon. Robert M. Levy, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
  VIA ECF

     Re:  <u>Randzio et al. v. Fruits-A-Plenty et al.</u>
        <u>EDNY Docket No.: 21-cv-04689-HG-RML</u>

Dear Judge Levy,

  I represent Plaintiffs in this matter. Plaintiffs and all Defendants submit the settlement agreement they reached in this matter (the "<u>Settlement</u>").

  Because Plaintiff's action and claims arise under the Fair Labor Standards Act, 29 U.S.C. Section 216(b) ("FLSA"), the Parties' settlement must be reviewed and approved by the Court. ***Cheeks v. Freeport Pancake House, Inc.***, 796 F.3d 199 (2nd Cir. 2015) (holding that given the unique considerations underlying the FLSA, any settlement of claims under the FLSA, which seeks dismissal with prejudice, can only be made pursuant to the approval of the court or of the Department of Labor).

  Counsel are jointly submitting the Settlement and Release Agreement (the "<u>Agreement</u>") (**Exhibit 1**) as well as my firm's invoice for costs (**Exhibit 2**) and backup documentation for costs and disbursements (**Exhibit 3**) for Your Honor's review and approval. The parties request that, upon your review and satisfaction that the Settlement is fair and reasonable and that the fees and costs are duly earned, Your Honor issue an order approving the settlement as well as the attorney fees and costs.

  The parties respectfully request and that the Court not close the case after its review and approval of the Agreement because under the terms of the Agreement, if payments are not timely made within 30 days of the approval of the Agreement and any default is not timely cured, the Settlement becomes automatically null and void and the parties will continue the litigation.

**I.**  **<u>Background of the Action</u>**

  On August 19, 2021, Plaintiffs – all grocery store workers -- commenced the instant collective/class action alleging violations of the Fair Labor Standards Act and the New York Labor Law. Plaintiffs Alicja Randzio ("<u>Randzio</u>"), Simon Castro ("<u>Castro</u>"), Bernabe Pascual Pablo ("<u>Pablo</u>"), Margarita Rosado ("<u>Rosado</u>"), Gilberto Reyes Martinez, ("<u>Martinez</u>"), and Gustavo Aguirre Cisneros ("<u>Aguirre</u>"), (collectively, "<u>Plaintiffs</u>"). Plaintiffs sued their former employers Defendants Fruits-A-Plenty, Inc. ("<u>Fruits-A-Plenty</u>"), Michael Lincer ("<u>Michael</u>") and Rachel Lincer ("<u>Rachel</u>") (collectively, the "<u>Fruits-A-Plenty Defendants</u>"). Plaintiffs also sued the purchasers of the grocery store New York Fruit King, Inc. ("<u>Fruit King</u>"), Shimon

1

Braun ("Shimon"), Pinchas Braun ("Pinchas"), and "Jane Doe" ("Jane"), (collectively, the "New York Fruit King Defendants") for continuing the alleged wage violations on the theory that they were Frutis-A-Plenty Defendants' successors in interest. Still further, Plaintiffs allege that the individual defendants who own and operate the corporate entities are joint employers of Plaintiffs and are thus jointly and severally liable for the damages herein. Finally, three Plaintiffs – Castro, Rosado and Pablo -- bring retaliation claims because they allege that they were terminated soon after they had complained about the wage violations.

Specifically, Plaintiffs allege that Defendants employed them as store clerks and helpers in their grocery store during different periods within the past six years and paid them below the minimum wage for every hour that they worked and did not pay them overtime at a premium rate of 150% of the minimum wage. Plaintiffs also allege that they did not receive a wage notice or proper paystubs in violation of New York Labor Law. *See,* generally, Complaint at DE 1.

Defendants vehemently deny Plaintiff's allegations and allege that they were fully compensated for the hours that they actually worked. Defendants deny Plaintiffs' claims that they worked Stakhanovite hours six or seven days a week and intend to contested such claims through Plaintiffs' former co-workers who were prepared to testify that Plaintiffs worked less hours and did not work as many days or hours in a workweek as they claimed. Further, Defendants deny that the individual defendants are, in fact, Plaintiffs' employers. Still further, Defendants deny Plaintiffs Castro, Rosado and Pablo's retaliation claims. Finally, New York Fruit King Defendants deny that they are successors in interest to the Fruits-A-Plenty Defendants and assert that they are not responsible for any damages attributable to the Fruits-A-Plenty Defendants. *See*, generally, Answer filed by Fruits A Plenty Defendants at DE 24 and Answer filed by New York Fruit King Defendants at DE 22.

In sum, there is a *bona fide* dispute between the Parties regarding the merits of Plaintiffs' wage and hour claims and which defendant, if any, is responsible for the damages. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.   Settlement Terms

The parties engaged in protracted settlement negotiations, which included two days of mediation before a very experienced ADR mediator. At the conclusion of the second day of mediation, the parties reached an agreement in principle on the material terms of the Settlement. Subsequently, the Parties engaged in months-long negotiations of the text of the Agreement which rivalled in length and intensity the negotiations of the Lateran Treaties. This Agreement of Plaintiffs' individual claims is the result.

At bar, Plaintiffs' realistic best case scenario was recovery of $454,000 for unpaid minimum wages and overtime, $60,000 for wage notice and paystub violations and $100,000 for the three Plaintiffs alleging retaliatory termination.

The Agreement calls for a payment of Three-Hundred Fifty Thousand Dollars ($350,000.00) within thirty (30) days of its approval. This represents approximately 60% of

Plaintiffs' total wage, paystub and retaliation violations that Plaintiff could prove. Under the Settlement, Plaintiffs will receive a net payment of $231,666.66 payable divided *pro rata* amongst them based on the value of their individual claims. Plaintiff's counsel will receive a total of $118,333.34 as attorney fees and costs, payable within thirty (30) days of the approval of the Settlement by the Court.

### III. <u>The Settlement is Fair and Reasonable</u>

The Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015) provides that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor. An FLSA settlement should receive judicial approval when it is "fair and reasonable." *See* **Wolinsky v. Scholastic, Inc**. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." **Crabtree v. Volkert, Inc.,** 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." **In re Penthouse Executive Club Compensation Litig**., 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" **Le v. SITA Info. Networking Computing USA, Inc**., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting* **Lynn's Food Stores, Inc. v. U.S. Dep't of Labor**, 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the *bona fide* disputes between the Parties. This is because the Agreement: (1) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (2) is the product of arm's-length bargaining between experienced labor and employment counsel which was completely devoid of any semblance of fraud or collusion. *See gen.* **Wolinsky**, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

*The Risk and Expenses Faced by the Parties*

Both Parties in this matter faced substantial risks in moving forward in this litigation. At this early stage of the proceedings, Plaintiffs are obtaining a substantial recovery without having to go through the time-consuming and risky process of litigating their claims and then, if successful, obtaining and enforcing a judgment.

As mentioned previously, Plaintiffs' claims that they worked long hours six days or seven days a week were to be contested by Defendants through their former co-workers who were prepared to testify that Plaintiffs only the days and hours recorded in the Defendants' records and did not work as many days and hours in a workweek as they claimed.

Plaintiffs also faced the prospect of waiting many months, if not years, for the matter to proceed through trial. Plaintiffs' claims against the Individual Defendants could also be extremely difficult to prove. Plaintiffs would have had to prove that each Individual Defendant could be considered as "joint employer" of Plaintiffs because of the level of control he or she exercised over Plaintiffs' employment.

There was one more concern which weighed heavily toward settlement: Plaintiff's legitimate concerns about the collectability of a judgment against Defendants. *See **Lliguichuzhca v. Cinema 60 LLC***, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013)("Case law recognizes that potential difficulty in collecting damages militates in favor of finding an [FLSA] settlement reasonable."); *see* also ***Cabrera v. Roselea Int's Services***, 2011 WL 7096634 at *4 (M.D. Fla. Dec. 30, 2011). Defendants operate a grocery store. It is common knowledge that grocery businesses operate at razor-thin margins and do a large part of their business in cash. And the value of any physical assets, such as used refrigerators and shelving might be low in contrast to the potential judgment. Moreover, even if some of the Individual Defendants could be considered joint employers, there were great doubts whether they would be financially able to satisfy a significant judgment.

Conversely, while Defendants were confident that they would be able to challenge Plaintiff's claims, they were also mindful of the risk that Plaintiff may have prevailed on some claims. Given the passage of time and the sale of the business, Defendants' records were incomplete. The absence of employment records for each and every week, coupled with Plaintiffs' recollection of working excessive overtime each week, would be difficult to overcome.

Furthermore, Defendants were aware that even if they were successful, it would have only occurred after a protracted litigation and at a significant cost. The costs of litigation and prospects of liability for Defendants clearly weighed in favor of early resolution. Defendants understood the risks inherent in proceeding through trial, including being potentially liable for higher amounts for liquidated damages and prejudgment interest, as well as substantially increased costs and attorney's fees for their own attorneys and additional amounts that might be owed for Plaintiff's attorney fees and costs. Accordingly, both Parties faced substantial risks in proceeding forward with the litigation, which weighs in favor of approval of the Agreement.

*The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion*

Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See*, ***Aponte v. Comprehensive Health Management, Inc.***, 2013 WL 1364147 at *4 (S.D.N.Y. 2013). And "[a] strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's length." ***Thompson v. Metro. Life Ins. Co.***, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). At bar, the parties were represented by competent counsel on both sides whose area of practice focuses on employment litigation and the representation was devoid of any semblance of collusion of fraud.

At bar, Plaintiffs fully participated in the mediation sessions through interpreters and in subsequent settlement discussions that ultimately resulted in the instant Settlement. During the mediation and in subsequent discussions, Plaintiffs consulted with their counsel on the offers

4

made and were involved in fashioning numerous demands. Plaintiffs duly considered the final offer before they accepted it.

The negotiating process, both during the settlement conference and subsequently, consisted of a long, hard- fought process of fleshing out the facts of the case, the terms of the agreement, reviewing documents and then drafting the text of the agreements ultimately accepted by the parties. The above indicates that the negotiating process was at arm's length and there has been no fraud or collusion in the process.

Accordingly, the Agreement should be approved by the Court.

## IV. Plaintiff's Application for Attorney Fees Should be Approved

Finally, the proposed settlement also covers Plaintiff's costs of $2,500.00 and attorney's fee of $115,833.33. For the reasons that follow, the fee and costs are reasonable and should be approved.

Plaintiffs can recover attorneys' fees as of right as a prevailing party pursuant to the FLSA and the New York Labor Law. See, e.g., 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)–(2), 663(1); *see* also ***Barfield v. N.Y.C. Health & Hosps. Corp***., 537 F.3d 132, 151 (2d Cir. 2008); ***Kahlil v. Original Old Homestead Restaurant, Inc***., 657 F.Supp.2d 470, 473 (S.D.N.Y. 2009) ("The Court in such action *shall* ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added) (citations omitted)). A party is considered a prevailing party "if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." ***Kahlil***, 657 F.Supp.2d at 473. It is not required that the plaintiff be successful on all claims; he/she must merely "demonstrate a change in the legal relationship between himself and the defendant arising from the resolution of the lawsuit." ***Id.*** The fact that Plaintiff prevailed via settlement and not litigation is immaterial. ***Id.*** Thus, as the prevailing party, Plaintiff is entitled to an award of attorneys' fees and reasonable costs as a matter of right. ***Id.***

In considering approval of an FLSA settlement, "[t]he court must also seperately assess the reasonableness of plaintiffs' attorney fees, even when the fee is negotiated as part of a settlement agreement rather than judicially determined." ***Lliguichuzhca v. Cinema 60 LLC***, 948 F.Supp.2d 362, 366 (S.D.N.Y. 2013)*.* The purpose of the separate assessment is to make sure that "the interests of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief [counsel] procured for clients." ***Wolinsky***, 900 F.Supp.2d at 336. But while the court must approve an award of attorneys' fees and costs in a settlement of FLSA claims, "it is not the responsibility of the Court to ensure that the employer is protected from overpaying an employee's attorneys' fees and costs." ***Misiewicz v. D'Onofrio General Contractors Corp.***, 2010 WL 2545439 at *5 (E.D.N.Y. May 17, 2010)(emphasis supplied) R&R adopted in ***Misiewicz v.D'Onofrio General Contractors Corp.***, 2010 WL 2545472 (E.D.N.Y. June 18, 2010). In the context of settling FLSA claims, courts should refrain from "disapprov[ing] a settlement on the amount of attorney's fees, since both parties assumingly ha[d] knowledge of how attorney's fees are calculated in this district and were negotiating at arm's length." ***Id.*** See also ***Wolinsky, supra, at 335-36.***

The' Court should consider a very substantial result achieved while conserving attorney time and judicial resources. As one court put it in a case in which I was plaintiffs' counsel:

> The parties reached a settlement agreement in principle - without the aid of the Court - before the initial pretrial conference, which was never held. The settlement negotiations themselves were extensive, however, and based in part on payroll records and other documents provided informally by defendants. There is much to be admired in this approach, which conserves both attorney time and judicial resources.

***Plizga v. Little Poland Rest. Inc.***, No. 15 cv 08820 LAK BCM, 2016 WL 9307474, at *5 (S.D.N.Y. July 18, 2016).

When determining reasonable attorneys' fees, courts in this Circuit routinely approve FLSA settlements which provide for net 1/3 contingency fees. ***Calle v. Elite Specialty Coatings, Inc.***, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014); ***Rangel v. 639 Grand St. Meat & Produce Corp.***, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)(same). At bar, Plaintiffs signed a retainer agreement which called for plaintiff's counsel's firm to receive 1/3 net contingency fee.

Under the lodestar method, my firm's time sheets reflect 153.2 hours of work by the undersigned at $450 per hour and 127 hours of work by the firm's junior associate at $125 per hour. Were my firm to issue a lodestar invoice, it would exceed $85,000.00. Yet my firm took a tremendous risk in taking a wage and hour case against a grocery store devoid of any real assets. As courts in this Circuit have clarified, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases." ***Fujiwara v. Sushi Yasuda Ltd.***, 58 F.Supp.3d 424, 439 (S.D.N.Y. 2014). Were the multiplier of 2 applied to my firm's lodestar invoice, it would yield approximately $170,000.00 fee. Consequently, a contingent fee of $115,833.33 net of costs is fair and reasonable.

My firm's work on this case began long before the filing of the Complaint and included consultation with the proposed plaintiffs and significant investigation into their claims. Further, my firm: held numerous conferences in person and by telephone with Plaintiffs either as a group or individually; conducted prodigious email correspondence with opposing counsel; researched the issue of successor-in-interest and performed other extensive legal research; drafted and filed a summons and complaint; drafted initial discovery disclosures; participated in a scheduling conference with the court; drafted a detailed mediation position statement; participated in two days of mediation; prepared damages calculations; analyzed documents provided by Defendants during the mediation; and negotiated and revised the proposed settlement agreement and drafted the instant letter motion.

The attorney fee is warranted owing to the quality of representation and the substantial result achieved. I have over 28 years' experience in employment litigation, and has litigated well over 400 cases of this type, the vast majority of them collective and class action cases.  I have been certified as a Rule 23 class counsel in four wage and hour lawsuits: ***Jankowski v. Castaldi***, 2006 WL 118973 at*4 (E.D.N.Y. Jan. 13, 2006); ***Niemiec v. Ann Bendick Realty***, 2007 WL

5157027 at *13 (E.D.N.Y. April 23, 2007); ***Bielski v. Danco***, E.D.N.Y. Docket No: 06-cv-6542; ***Gortat v. Capala Brothers, Inc***., EDNY Docket No.: 07-cv-3629. In the ***Gortat*** matter, Plaintiff's counsel obtained a jury verdict for the named plaintiffs and the class. I also conducted a number of bench trials in state and federal courts as well, including ***Brassco, Inc. v. Klipo*** 2006 WL 223154 (S.D.N.Y. Jan. 27, 2006)(breach of duty of loyalty by a manager) and ***Drozd et al. v. USA Concepts***, EDNY 09-cv-5120-RER (Jan. 20, 2017)(wage and hour claims by employees under the FLSA and New York and New Jersey labor laws). I also obtained several positive decisions in the wage and hour field from the 2nd Circuit, including ***Gortat v. Capala Bros.,*** 568 Fed. Appx. 78 (2nd Cir. 2014) and ***Kroshnyi v. U.S. Pack Courier Servs***., 771 F.3d 93 (2nd Cir 2013).

As regards costs, attached herewith are copies of Plaintiff's invoice for costs as well as the backup documentation. *See* **Exhibits 2** and **3.** While the invoice for the costs is $3,594.00, I reduced them to $2,500 because at the mediation Plaintiffs consented to the Settlement based on my estimate of costs to be $2,500.00. The backup documentation consists of invoices, or other documents evidencing expenses incurred. It is redacted to remove critical information, such as the firm's account numbers, credit card or bank account numbers and the like. Further, the backup documentation is arranged in the order in which the entry appears on the respective Firm invoice. It is important to note that the date which appears on the invoices presented by Plaintiff's counsel's firm for payment reflects the date on which the expenses were allocated in the matter, not when they were incurred. Plaintiff's counsel represents to the Court that the expenses were contemporaneously recorded or allocated to the Clients' file in the ordinary course of business.

For the foregoing reasons, the contingency fee of 1/3 of the net settlement amount, i.e. $115,833.33 as well as costs of $2,500 to be received by Plaintiff's counsel's firm in the case at bar are fair and reasonable and should be approved.

### IV.    Conclusion

Because a "reasonable" settlement is not necessarily susceptible to a mathematical equation yielding a particularized sum, courts approve settlements falling within a "range of reasonableness." ***Newman v. Stein***, 464 F.2d 689, 693 (2d Cir. 1972); ***In re Luxottica Group***, 233 F.R.D 306, 316 (E.D.N.Y. 2006) (settlement fell within range of reasonableness even though greater recovery could have been achieved at trial); ***In re Western Union Money Transfer Litig***. 2004 WL 3709932, at *9 (E.D.N.Y. 2004) (same). Here, given the difficulty of proof, the quality of the evidence and the allocation of the burden of proof on Plaintiffs, as well as legitimate concerns about the length of the lawsuit and collectability on the judgment, the $350,000.00 FLSA/NYLL settlement represents a reasonable compromise with respect to contested issues and, therefore, should be approved.

                                               Respectfully submitted,

                                               /s/ Robert Wisniewski
                                               Robert Wisniewski

cc: via ECF
     *All Counsel of Record*